1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11   LESLIE ANN CHISSIE,
                                  No. 2:09-cv-02915-MCE-CKD
12           Plaintiff,

13       v.                       <u>MEMORANDUM AND ORDER</u>

14   WINCO FOODS, LLC; JOEL CLARK,
     and DOES 1 through 25,
15   inclusive,

16           Defendants.

17                      ----oo0oo----

18

19       Through the present lawsuit, Plaintiff Leslie Ann Chissie

20   ("Plaintiff") seeks damages for disciplinary actions taken

21   against her by her former employer, Defendant WinCo Foods, LLC

22   ("WinCo").  Plaintiff's action, initially filed in state court,

23   was removed to this Court on grounds that the state law claims it

24   contained were preempted by Section 301 of the Labor Management

25   Relations Act of 1947, 29 U.S.C. § 185 ("LMRA") and that federal

26   jurisdiction was accordingly conferred by the LMRA.

27   ///

28   ///

                            1

WinCo, along with Plaintiff's individually named supervisor, Defendant Joel Clark, now move for summary judgment as to Plaintiff's complaint, or alternatively for summary adjudication as to discrete claims asserted within that Complaint.  Defendants allege, <u>inter alia</u>, that they are entitled to judgment as a matter of law as to Plaintiff's state law claims because of LMRA preemption.  As set forth below, because this Court finds that Plaintiff's state law claims are indeed preempted, summary judgment will be granted on that basis.[1]

**BACKGROUND**

In mid-2008, Plaintiff, who had been the Bakery Manager for WinCo's Yuba City, California, store since April of 1997, was accused by a coworker of making offensive and discriminatory remarks.  Plaintiff was heard stating in the store's breakroom that she wanted to leave California to get away from "gays and blacks."  Plaintiff also allegedly referred to a co-worker's same sex marriage as "fucking nasty."  Particularly in view of Plaintiff's management status, an investigation into her conduct ensued.  Plaintiff and others were interviewed.

///

///

///

///

---

[1] Because oral argument was not of material assistance, the Court ordered this matter suitable for decision without oral argument.  Eastern District Local Rule 230(g).

1       According to Defendants, Plaintiff initially denied making
2   the claimed statements.  She then conceded to having commented,
3   after reading a newspaper in the breakroom, that the state was
4   "messed up" and that she someday wanted to retire outside the
5   state.  She denied making any specific comments about same sex
6   marriages or about race.

7       During a second interview with both the Store Manager,
8   Defendant Clark, and Assistant Store Manager Denise Bailey,
9   Plaintiff continued to deny the comments attributed to her.  Once
10  the investigation was complete, WinCO determined that Plaintiff
11  had been forthcoming about her conduct.

12      Plaintiff was a member of the Department Hourly Manager
13  Employee Association ("DMHEA").  DMHEA and WinCo negotiated and
14  entered into a Collective Bargaining Agreement ("CBA") which set
15  forth the terms of Plaintiff's employment with WinCo.  (WinCo's
16  Undisputed Fact ("UF") No. 3.)  The CBA provides that employees
17  can be immediately terminated for gross misconduct as defined by
18  WinCo's Company Personnel Policies. (Id. at No. 4.)  Dishonesty
19  and violations of WinCo's Non-Discrimination and Anti-Harassment
20  Policy are both cited in the Company Personnel Policies as
21  examples of gross misconduct that may result in immediate
22  discharge.  (Id. at Nos. 5-6.)  Plaintiff signed a copy of the
23  Personnel Policies and understood that she could be terminated
24  for such violations.  (Id. at Nos. 7 and 8.)  On September 17,
25  2008, Plaintiff was terminated by Winco pursuant to the CBA for
26  dishonesty and for having violated WinCo's Non-Discrimination and
27  Anti-Harassment Policy.
28  ///

3

1  She was not paid vacation pay at that time because the CBA

2  provided that no such benefits were available in the event of

3  gross misconduct.  (Id. at No. 18.)

4      Plaintiff grieved her initial termination to the DHMEA

5  grievance committee, which upheld WinCo's termination decision.

6  Thereafter, as a result of a second appeal to the Hourly Employee

7  Association ("HEA") grievance committee, that committee decided

8  to reinstate Plaintiff, but deemed her time off between

9  termination and reinstatement to be an unpaid suspension.

10 Although the HEA grievance committee initially determined that

11 Plaintiff should be reinstated to her former position as Bakery

12 Manager, during a subsequent November 1, 2008, meeting with

13 Defendant Clark and the Assistant Store Manager (Denise Bailey),

14 Plaintiff was informed that WinCo had in fact decided to demote

15 Plaintiff from Bakery Manager to a cashier.  Decl. of Joel Clark,

16 ¶ 10.[2]  According to WinCo, pursuant to established company

17 policy managers who receive suspensions are subject to demotion.

18 See Dep. of Ben Swanson, 91:4-16; 96:22-97:21, pertinent portions

19 of which are attached as Ex. B to the Decl. of Jasmine L.

20 Anderson.

21 ///

22 ///

23

24      [2] The Court notes that numerous objections have been filed
   by both sides to various declarations submitted in this matter,
25 including objections to the Declaration of Joel Clark offered by
   Defendants.  To the extent the Court incorporates any portions of
26 Declarations from either side within the instant Memorandum and
   Order, said objections are overruled.  Otherwise, with respect to
27 the vast majority of the objections, the matters they encompass
   were not pertinent to the Court's decision.  Therefore the Court
28 need not rule on said objections and it declines to do so.

4

Although Plaintiff appears to dispute that practice by way of
opposition to this motion, in her deposition she appears to
concede that WinCo had the right to demote employees under the
CBA.  Pl.'s Dep., 242:10-20, Ex. A to the Anderson Decl.

Despite being told by Defendant Clark to report to work as a
cashier the day following the above-described meeting, Plaintiff
failed to do so and called in sick for her scheduled shift.  This
was consistent with her statement to Defendant Clark the day
beforehand that she would decline to report for the cashiering
shift.  Clark thereafter wrote Plaintiff and asked her to provide
medical documentation as to her illness by November 7, 2008, or
be considered a voluntary quit.  See Decl. Of Joel Clark, ¶ 10,
and certified letter to Plaintiff dated November 4, 2008,
attached as Ex. 4 thereto.  On November 12, 2008, five days after
the deadline to provide the requested medical documentation had
passed, Plaintiff was deemed a voluntary quit.

Plaintiff filed the present lawsuit approximately nine
months later, on August 18, 2009, in the Superior Court of the
State of California in and for the County of Sutter.  Defendants
timely removed the matter to this Court on October 20, 2009 on
grounds that Plaintiff's state law claims contained therein in
fact were subject to Section 301 of the LMRA, therefore vesting
jurisdiction in federal court.  Plaintiff thereafter moved to
remand her suit back to state court, in part on grounds that the
LMRA did not apply because no interpretation of the CBA was
needed to decide the issues presented by the case.

///

///

In opposition, Defendants disagreed, arguing that Plaintiff's claims were in fact preempted by the LMRA because they could not be resolved without interpreting the terms of the CBA.

This Court denied Plaintiff's Motion to Remand by Memorandum and Order filed February 12, 2010, finding that it did have jurisdiction because "Plaintiff's state law claims are preempted by the LMRA..." ECF No. 20, pp. 11-12.  As the Court explained, it "will undoubtedly need to interpret and construe the CBA to ascertain the parties' expectations both in terms of the conditions of employment and the nature and extent of any necessary discipline." Id. at 7:16-20.

By way of the motions for summary judgment presently before the Court, Defendants now seek dismissal of Plaintiff's state law claims in their entirety as preempted, an action which the Court's previous Memorandum and Order largely determined, at least in broad conceptual terms, already.  The instant motion asks the Court to apply LMRA preemption analysis to each of Plaintiff's ten state law causes of action.  Moreover, in addition to arguing preemption, Defendants alternatively seek summary adjudication on various other grounds, including failure to state a valid claims, in any event and failure to exhaust required administrative remedies.

///

///

///

///

///

///

6

**STANDARD**

        The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

        Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992). The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

///

1    If the moving party meets its initial responsibility, the

2  burden then shifts to the opposing party to establish that a

3  genuine issue as to any material fact actually does exist.

4  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

5  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

6  253, 288-89 (1968).

7    In attempting to establish the existence of this factual

8  dispute, the opposing party must tender evidence of specific

9  facts in the form of affidavits and/or admissible discovery

10 material in support of its contention that the dispute exists.

11 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

12 the fact in contention is material, i.e., a fact that might

13 affect the outcome of the suit under the governing law, and that

14 the dispute is genuine, i.e., the evidence is such that a

15 reasonable jury could return a verdict for the nonmoving party.

16 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

17 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper

18 Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,

19 "before the evidence is left to the jury, there is a preliminary

20 question for the judge, not whether there is literally no

21 evidence, but whether there is any upon which a jury could

22 properly proceed to find a verdict for the party producing it,

23 upon whom the onus of proof is imposed."  Anderson, 477 U.S. at

24 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson,

25 81 U.S. 442, 448 (1871)).  As the Supreme Court explained,

26 "[w]hen the moving party has carried its burden under Rule 56(c),

27 its opponent must do more than simply show that there is some

28 metaphysical doubt as to the material facts ....

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

In analyzing the preemptive force of the LMRA under the particular circumstances of this case, a general discussion of LMRA preemption may initially be helpful.  Under Section 301 of the LMRA, federal courts have jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees."  29 U.S.C. § 185(a).  The statute was a "mandate" for federal courts "to fashion a body of federal common law to be used to address disputes arising out of labor contracts."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985).  As a result of this expansive mandate, the "preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization."

1  <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1,

2  23 (1983).  A preempted claim "purportedly based on [a]...state

3  law is considered, from its inception, a federal claim, and

4  therefore arises under federal law."  <u>Caterpillar, Inc. v.</u>

5  <u>Williams</u>, 482 U.S. 386, 393 (1987).

6       It is therefore "well settled that Section 301 preempts

7  state law claims which are founded on rights created by a

8  collective bargaining agreement."  <u>Cramer v. Consolidated</u>

9  <u>Freightways, Inc.</u>, 209 F.3d 1122, 1129 (9th Cir. 2000).  The LMRA

10 preempts application of a state law "if such application requires

11 the interpretation of a collective-bargaining agreement."

12 <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 411

13 (1988).  "When resolution of a state-law claim is substantially

14 dependent upon analysis of the terms of an agreement made between

15 the parties in a labor contract, that claim must either be

16 treated as a § 301 claim or dismissed as pre-empted by federal

17 labor-contract law."  <u>Lueck</u>, 471 U.S. at 220; <u>see</u> <u>also</u> <u>Stikes v.</u>

18 <u>Chevron U.S.A.,Inc.</u>, 914 F.2d 1265, 1268 (9th Cir. 1990)(citing

19 <u>Caterpillar v. Williams</u>, 482 U.S. at 394).

20      The Court of Appeals for the Ninth Circuit recently

21 clarified the analysis for determining whether § 301 preempts a

22 particular state cause of action.  A court must first inquire

23          whether the asserted cause of action involves a right
            conferred upon an employee by virtue of state law, not
24          by a CBA.  If the right exists solely as a result of
            the CBA, then the claim is preempted, and our analysis
25          ends there.  If, however, the right exists
            independently of the CBA, we must still consider
26          whether it is . . . substantially dependent on analysis
            of a collective-bargaining agreement.  If such
27          dependence exists, then the claim is preempted by
            section 301; if not, then the claim can proceed under
28          state law.

                                   10

1  <u>Burnside v. Kiewit Pac. Corp.</u>, 491 F.3d 1053, 1059-60 (9th Cir.
2  2007) (internal citations and quotations omitted).

3       To determine whether a state law right is substantially
4  dependent on the terms of a CBA, courts must decide whether a
5  particular claim can be resolved by "look[ing] to" as opposed to
6  interpreting the CBA.  <u>See</u> <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 125
7  (1994); <u>Cramer v. Consol. Freightways, Inc.</u>, 255 F.3d 683, 691
8  (9th Cir. 2001).  Claims that may be resolved by looking to the
9  CBA are not preempted; those interpreting the CBA are.  This
10 distinction is "not always clear or amenable to a bright-line
11 test."  <u>Cramer</u>, 255 F.3d at 691.  Prior Supreme Court and Ninth
12 Circuit decisions provide some guidance in making this
13 determination.  Neither "'look[ing]' to the CBA merely to discern
14 that none of its terms is reasonably in dispute," <u>see</u> <u>id.</u> at 692,
15 nor "the simple need to refer to bargained-for wage rates in
16 computing [a] penalty," <u>see</u> <u>Livadas</u>, 512 U.S. at 125, is enough
17 to warrant preemption.

18      Having reviewed the general principles applicable to
19 preemption, by the LMRA, of claims rooted in state law, we now
20 turn to the particular claims asserted by Plaintiff herein.

21

22      **A.   Plaintiff's Claims Premised on Alleged "Tortious"**
        **Discipline.**
23

24      In Plaintiff's First Cause of Action for Tortious Discharge
25 in Violation of Public Policy, she alleges she was "improperly
26 terminated" for dishonesty despite provisions in the CBA
27 requiring that dismissals be for "cause."
28 ///

11

Compl., ¶ 49-50.[3]   Plaintiff goes on to describe the grievance procedure she proceeded to utilize and alleges discrimination and harassment by Clark, in contravention of the public policy and laws of the State of California, due to his allegedly wrongful investigation concerning Plaintiff's purportedly offensive comments about blacks and gays.  Id. at 50-51.  Plaintiff specifically claims she was harassed for having utilized "the grievance procedure contained in the Wage Agreement [CBA]."  Id. at 52.  Plaintiff contends that WinCo "authorized and ratified" the improprieties that ultimately resulted in her wrongful termination, suspension, and demotion upon reinstatement.  Id. at 59-60.

In order to determine whether management's actions were indeed discriminatory and harassing, it is clear that the Court will have to interpret the terms of the CBA to determine whether Plaintiff was disciplined in a manner consistent with that agreement.  Indeed, the provisions contained in the CBA will have to be carefully analyzed in that regard.  The fact that determination of Plaintiff's claim is "substantially dependent" on the terms of the CBA mandates preemption.  As such, Plaintiff's state law claim for tortious discharge cannot survive scrutiny under Section 301.  Burnside v. Kiewit Pac. Corp., 491 F.3d at 1059-60.

///

---

[3] The Court notes that Defendants have filed a Request for Judicial Notice as to Plaintiff's Complaint along with several other filings in this matter.  While it is not necessary to request judicial notice as to the contents of the Court's file herein, Defendants' request is unopposed and will accordingly be granted in any event.

The LMRA "preempts all state-law causes of action the evaluation
of which requires interpretation of a labor contract's terms."
Hayden v. Reickerd, 957 F.2d 1506, 1508-09 (9th Cir. 1991); see
also 29 U.S.C. § 185(a).

The same preemption analysis equally applicable to
Plaintiff's Second Cause of Action for Tortious Discharge in
Violation of Public Policy, as well as her Third Cause of Action
for Tortious Discipline in Violation of Public Policy.  In
addition, the Fourth Cause of Action for Retaliation is similarly
dependant on interpretation of the CBA in claiming that WinCo's
termination, suspension and demotion all were done to retaliate
against Plaintiff "for her utilization of the grievance
procedure" contained within the CBA.  Compl., ¶ 105.  Once again,
the CBA and its provisions, in determining whether WinCo's
actions were in accordance therewith or instead amounted to
wrongful retaliation, stands front and center.  At the very
least, Plaintiff's claims are "inextricably intertwined with
consideration of the terms of [a] labor contract," and are
accordingly preempted.  Hayden v. Reickerd, 957 F.2d at 1509,
citing Miller v. AT&T Network Sys., 850 F.2d 543, 545 (9th Cir.
1988).


**B.   Plaintiff's Defamation Claim.**


Plaintiff fares no better in arguing that her Fifth Cause of
Action for defamation, escapes LMRA preemption.  That claim is
based on "allegations of racism, dishonesty, gross misconduct,
and harassment" that Plaintiff claims are defamatory.

Compl., ¶ 115.  Since it is axiomatic that truth is a defense to defamation, in assessing the merits of Plaintiff's claim in that regard, it will become necessary to review the terms of the CBA to determine whether Plaintiff did indeed engage in gross misconduct (dishonesty and violation of WinCo's anti-harassment policy) as defined by the CBA.  See Ruiz v. Sysco Food Services, 122 Cal. App. 4th 520, 531 (2004) (defamation claim preempted by the LMRA because it "arose in connection with and [is] inextricable from the actual disciplinary or investigative procedures involved, as set forth in the CBA.").

In arguing that her defamation claim is not in fact preempted, Plaintiff cites language from Hayden v. Reickerd, supra, to the effect that "[n]on-negotiable state law rights.... independent of any right established by contract are not preempted..." 957 F.2d at 1509.  The Hayden court went on to explain that Congress never intended "to preempt state rules that proscribe conduct... independent of a labor contract." Id.  The key to that proposition, however, is the preservation of state law claims independent from the terms and provisions of a CBA.  Here, as explained above, neither plaintiff's defamation claim or her other state law claims can be considered independent from the CBA.  Consequently they are preempted.

///
///
///
///
///
///

14

### C. Plaintiff's Claim for Intentional Infliction of Emotional Distress.

Plaintiff's Sixth Cause of Action for Intentional Infliction of Emotional Distress similarly fails. Plaintiff specifically alleges in her complaint that Defendants' "refusal to adhere to, uphold and abide by the terms of the Wage Agreement was intended to, and did cause, severe emotional distress... and was done with a conscious disregard of the probability of causing such distress." Compl., ¶ 131. As Defendants point out, such claims clearly require the Court to interpret the terms of the CBA, and accordingly are preempted by the LMRA. See Harris v. Alumax Mill Products, Inc., 897 F.2d 400, 403 (9th Cir. 1990) (intentional infliction claim preempted by LMRA); see also Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1286 (9th Cir. 1989) (intentional infliction claim preempted because resolution of the claim was inextricably intertwined with the interpretation of the CBA).

### D. Plaintiff's Contractually Based Claims.

Plaintiff's contractually based claims are, if anything, even more rooted in the provisions of the CBA. Plaintiff's Seventh Cause of Action for Breach of Contract specifically alleges various breaches of the CBA. Compl., ¶¶ 138-142.

///

///

///

///

15

1   Similarly, Plaintiff's Eighth Cause of Action for Breach of the

2   Implied Covenant of Good Faith and Fair Dealing alleges that the

3   CBA, which Plaintiff describes as an "employment contract,"

4   contained an implied covenant of good faith and fair dealing that

5   Defendants abrogated.  Id. at 144, 147-48.  Those claims

6   consequently also directly implicate the terms of the CBA and

7   are, as such, preempted.  See, e.g., Chmiel v. Beverly Wilshire

8   Hotel Co., 873 F.2d at 1285-86 (both contract and breach of the

9   covenant claims preempted by Section 301 to the extent they

10  invoke the CBA).

11

12      **E.   Plaintiff's Claim for Unpaid Vacation Pay.**

13

14      Plaintiff's Tenth (and final) Cause of Action[4] for recovery

15  of unpaid vacation pay asserts that Defendants failed to pay

16  Plaintiff the unused portion of her vacation pay when they

17  terminated her on September 17, 2008.  Compl., ¶ 162.  While

18  Plaintiff concedes that the CBA authorizes forfeiture of vacation

19  pay upon termination for "gross misconduct," she claims the CBA's

20  provisions in that regard are prohibited by California Labor Code

21  § 227.3.

22  ///

23  ///

24  ///

25  ///

26

27      [4] With respect to Plaintiff's Ninth Cause of Action for
    Improper Denial of COBRA benefits under 29 U.S.C. § 1161,
    Plaintiff does not oppose dismissal of that claim.  WinCo's
28  Opp'n, 20:4-5.

1    In fact, California Labor Code § 227.3 creates an exception
2  to the general rule that any unpaid vacation wages shall be paid
3  at termination when the applicable CBA provides to the contrary.
4  As the statute states, "Unless otherwise provided by a
5  collective-bargaining agreement.... all vested vacation shall be
6  paid (upon termination)."  Cal. Labor Code § 227.3.  Here, the
7  CBA plainly does carve out an exception in the event of
8  termination for gross misconduct: "Vacations earned but not taken
9  will not be paid to employees terminated for gross misconduct
10 under the Company Personnel Policies defining gross misconduct.
11 CBA, attached as Ex. 1 to the Decl. of Joel Clark, Section I,
12 paragraph 6.  Once again, any analysis of the merits of
13 Plaintiff's claim for unpaid vacation is also preempted by the
14 LMRA since the propriety of Defendants' failure to pay such wages
15 rests exclusively on the provisions of the CBA which must
16 necessarily be interpreted.  See <u>Hayden v. Reickerd</u>, 957 F.2d at
17 1508-09.

18
19                            **CONCLUSION**
20
21    For the reasons set forth above, Defendants' Motions for
22 Summary Judgment (ECF Nos. 54 and 55) are GRANTED on grounds that
23 Plaintiff's state law claims against Defendants are preempted by
24 the LMRA.  Because the Court finds that Defendants are entitled
25 to summary judgment on preemption grounds alone, it need not
26 address Defendants' alternative grounds in moving for summary
27 judgment, and declines to do so.
28 ///

                              17

1     Despite the Court's finding of preemption it nonetheless
2  believes that Plaintiff may be entitled to bring claims premised
3  on the LMRA as opposed to state law.  In the present matter, the
4  Court's February 2, 2010 Order on Plaintiff's Motion to Remand,
5  as stated above, suggested strongly that Plaintiff's state law
6  claims were indeed preempted.  Defendants nonetheless failed to
7  take steps to have Plaintiff's claims dismissed on that ground
8  until they filed the present motions for summary judgment and set
9  those motions for hearing on the last possible day authorized by
10 the Court's Pretrial Scheduling Order (ECF No. 21).  Moreover,
11 the bench trial in this matter has already been continued to
12 February 11, 2013, which in the Court's estimation affords
13 sufficient time to amend the pleadings at this juncture.  Given
14 these circumstances, and in accordance with its discretion to
15 permit amendment "when justice so requires,"[5] the Court will
16 permit Plaintiff to file an amended complaint stating claims
17 under the LMRA, should she choose to do so.[6]  Any such amended
18 complaint must be filed not later than twenty (20) days following
19 the date of this Memorandum and Order.
20 ///
21 ///
22 ///
23
24     [5] See Fed. R. Civ. P. 15(a)(2); see also Nguyen v. United
   States, 792 F.2d 1500, 1503 (9th Cir. 1986) ("Granting leave to
25 amend after summary judgment is thus allowed at the discretion of
   the trial court").

26     [6] While Defendants advanced an argument in their reply that
   any such amendment may be time barred, that issue, having been
27 raised for the first time by way of reply, has not been fully
   briefed.  Nor is it even squarely before the Court in the absence
28 of a pending LMRA claim.

If no amended pleading has been filed at the conclusion of said twenty (20) day period, the Court will enter judgment in favor of Defendants without further notice.

IT IS SO ORDERED.

Dated: February 13, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

19